IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RORY QUINN LILLIE (#261837), § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-05-3542 |
| § | |
| SHERIFF TOMMY THOMAS, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Harris County Jail inmate Rory Quinn Lillie filed this action, *pro se* and *in forma pauperis*, under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement. At the Court's request, Lillie has supplemented his pleadings with a more definite statement of his claims. Tommy Thomas, in his capacity as Harris County Sheriff, has filed a motion for summary judgment on all of Lillie's claims. (Doc. #15) (the "Defendants' Motion"). Lillie has not filed a response and his time to do so has expired. After reviewing all of the pleadings, the motion, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth below.

**I.     BACKGROUND**

Lillie is currently in custody at the Harris County Jail, facing charges of aggravated sexual assault of a child in state court cause number 1019611. Lillie reports that he was arrested on those charges on March 31, 2005, and that he has been in custody since that time awaiting trial in the 208th District Court of Harris County, Texas. Lillie sues Harris County Sheriff Tommy Thomas, and several other individuals employed at the Jail, including Major

McWilliams, Major Brownfield, Captain J. Albers, Lieutenant Freeman, Chief Deputy M. Smith, Dr. Mack-Lockett, and Deputy Gage. Lillie's allegations concern the conditions of his confinement at the Jail.

Lillie's chief complaint takes issue with the level of medical care that he has received while in custody at the Jail. Lillie alleges that, on April 5, 2005, he noticed "what looked like pimples under [his] right eye and on both [his] arms." He describes the pimples as "irritating, itchy, and painful." On April 12, 2005, Lillie was treated in the Jail clinic by Dr. Mack-Lockett. According to Lillie, Dr. Mack-Lockett prescribed an ointment that "treated [the] symptoms," but did not cure or heal his problem. Lillie alleges in his more definite statement that, when the condition began to spread and worsen, he submitted another request to see a doctor on May 14, 2005. Lillie was seen in the Jail clinic on May 16, 2005, by a different physician, Dr. Guice. Lillie claims that Dr. Guice diagnosed a "staphylococcus infection" and prescribed appropriate medication that resolved his condition.

Lillie adds that he sent numerous grievances to the other defendants, complaining about the allegedly mistaken diagnosis made by Dr. Mack-Lockett. Lillie claims that, as a result of these grievances, he was transferred to an overcrowded cell in retaliation for complaining about Dr. Mack-Lockett's negligent failure to provide adequate treatment. Lillie seeks monetary damages from each of the defendants in their official and individual capacities.

After reviewing all of the pleadings, the Court requested an answer from Harris County Sheriff Tommy Thomas. Sheriff Thomas and Harris County have filed a joint

motion for summary judgment, which disposes of Lillie's claims against all of the defendants. In particular, the defendants present copies of Lillie's grievance records and argue that he failed to exhaust administrative remedies prior to filing suit. Alternatively, the defendants argue that Lillie's claims are without merit. These arguments are addressed below under the governing standard of review.

## II. STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted).

3

"An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

As noted above, the plaintiff has not filed a response to the motion for summary judgment. According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4. The Court specifically directed the

plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution. (Docket Entry No. 6, ¶ 5). Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed. *See Hetzel*, 50 F.3d at 362 n.3. However, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### III. DISCUSSION

#### A. Failure to Exhaust Remedies

Lillie filed his civil rights complaint on October 13, 2005. Because Lillie is an incarcerated inmate who proceeds *in forma pauperis*, the complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Sheriff Thomas argues that Lillie's complaint must be dismissed because he did not exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), before filing suit in federal court. Because

exhaustion of remedies is required for all of the claims asserted by Lillie, the Court addresses this issue first.

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). The exhaustion requirement plainly applies to the claims raised by Lillie about conditions at the Harris County Jail.

The Harris County Sheriff's Department has a policy that allows all persons in custody the opportunity to file a grievance consistent with procedures outlined in the *Inmate Handbook*. (Defendants' Motion, Exhibit B, Harris County Sheriff's Office Grievance Policy). According to the *Inmate Handbook*, a copy of which was provided to Lillie upon his book-in at the Jail, inmates are instructed to "first try to solve the problem with the Deputy or Staff Member on duty." (Defendants' Motion, Exhibit C, *Harris County Jail Inmate Handbook* at C). If informal means of resolution do not result in a solution, inmates "may then file a Grievance." (*Id.*). A formal grievance requires a written statement by the inmate that "fully and truthfully explains the incident that occurred," providing the date,

time, and location of the incident, as well as the names of the deputies or staff members involved and those who were witnesses to the incident. (*Id.*). If the grievance is not resolved at this initial level following an investigation, it goes to a hearing before the Inmate Grievance Board. (*Id.*). The inmate will be notified of the Grievance Board's decision in writing within fifteen days. (*Id.*). If the inmate disagrees with the findings of the Grievance Board, then the inmate is instructed to appeal to the Captain of the Inmate Affairs Division. (*Id.*).

Lillie insists that he exhausted his administrative remedies by filing numerous grievances. The record reflects that Lillie did file numerous grievances regarding his conditions of confinement. (Defendants' Motion at ¶ 4.10 & Exhibit C, *Affidavit of James C. Faulkner*). Prior to filing the complaint in this case, Lillie submitted grievances concerning housing, laundry, and the medical services department on the following dates: May 2, 2005, May 9, 2005, May 16, 2005, June 2, 2005, June 30, 2005, July 18, 2005, August 1, 2005, and August 15, 2005. (*See id.*). A chronological review of these grievances shows that all were investigated and that they were either resolved or determined to be "unfounded" at the initial level of review. (Defendants' Motion at ¶ 4.10).

The record further shows that Lillie did not complete both steps of the grievance process with regard to the allegations in his complaint. Lillie completed the administrative process in compliance with existing Jail policy only with respect to the grievance that he filed on July 18, 2005. That is the only grievance from which Lillie appealed the result that he received from the Inmate Grievance Board to the Captain of Internal Affairs. Importantly,

7

a review of that grievance reflects that it does not concern any allegations that form the basis of the original complaint.[1] Thus, the record shows that Lillie did not fully exhaust available administrative remedies by pursuing an appeal with respect to the incidents that he complains of in federal court. By failing to complete this final step in the administrative process, the defendants argue that Lillie has failed to properly exhaust his administrative remedies with respect to all of his claims.

In a recent decision, the Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules. Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *See id.*, 126 S. Ct. at 2389-90. By failing to compete the grievance process in compliance with Jail procedures, Lillie failed to properly exhaust his administrative remedies before filing his civil rights complaint in federal court. This is not sufficient to satisfy the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"), *cert. denied*, 526 U.S. 1133 (1999).

---

[1] The grievance filed by Lillie on July 18, 2005, complains that legal material and mail was taken from Lillie's cell and thrown away by unidentified deputies. The grievance also complains about the practice of "[p]assing mattresses from one inmate to another" as "unsanitary[.]" (Defendants' Motion, Exhibit C, Grievance July 18, 2005).

In summary, the undisputed record shows that Lillie failed to properly exhaust his administrative remedies before filing suit in federal court. Lillie's failure to exhaust administrative remedies affects all of his claims, meaning that his complaint is subject to dismissal for lack of compliance with § 1997e(a). Because the record discloses no genuine issue of material fact, the defendants are entitled to summary judgment on this issue. Alternatively, the Court concludes that the plaintiff's claims of inadequate medical care and retaliation fail for other reasons discussed further below.

**B.     Inadequate Medical Care**

Lillie complains that he received inadequate medical care because Dr. Mack-Lockett incorrectly diagnosed his illness on his initial visit to the Jail clinic. Lillie contends further that, when he complained about the inadequate treatment by Dr. Mack-Lockett, other defendants did nothing to help him. The defendants insist that Lillie has received adequate care for the complained of condition.

A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. § 1983.[2] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In that context, it is "obduracy and wantonness, not inadvertence or error in good

---

[2]     Lillie is presently detained in the Harris County Jail pending a trial setting. The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)), *cert. denied*, 534 U.S. 1136 (2002). Accordingly, the same standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates. *See id.*

9

faith," that characterizes the conduct prohibited by the Eighth Amendment, "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Thus, the prison official's state of mind must be examined to determine whether the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference." *Bradley*, 157 F.3d at 125 (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).

The deliberate indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To meet this showing, a plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (citations omitted). A review of Lillie's allegations, and the record of the treatment that he received, shows that he fails to demonstrate deliberate indifference in this instance on the part of any defendant.

Lillie's primary complaint is that treatment provided by Dr. Mack-Lockett was inadequate because her initial diagnosis was incorrect. Lillie insists that Dr. Mack-Lockett was negligent because she failed to diagnose a staphylococcus infection. Because of the alleged mistaken diagnosis, Lillie claims that the medication initially prescribed by Dr. Mack-Lockett was not adequate to treat his condition. As a result, Lillie alleges that the infection spread and became worse.

Lillie does not contend that he was denied treatment. As Lillie concedes in his more definite statement, he received additional care from Dr. Guice shortly after his initial visit to the Jail clinic, and that he has received additional care from Dr. Mack-Lockett, who has since prescribed antibiotics and other medications. Lillie complains, nevertheless, that he was provided inadequate treatment by Dr. Mack-Lockett because she failed to diagnose a staphylococcus infection during her initial evaluation on May 12, 2005. Lillie insists, therefore, that her "incompetence" has caused him to suffer.

The record refutes Lillie's allegations that the initial diagnosis made by Dr. Mack-Lockett was wrong, that he was ever diagnosed with a staphylococcus infection, or that he was denied adequate care. The defendants have presented an affidavit from the Bobby D. Davis, the Medical Administrator of the Harris County Sheriff's Department Medical Services Division. (Defendants' Motion, Exhibit A, *Davis Affidavit*). The affidavit from Davis, which summarizes Lillie's medical records, reflects that Lillie has received consistent care for his health-related complaints while in the Jail. Lillie was arrested on May 31, 2005, and screened at intake on April 1, 2005, where he reported no medical complaints. On May

11

10, 2005, Lillie complained of a "rash" and was scheduled for an appointment with a physician the following day. Lillie did not show up for his appointment on May 11, 2005. On May 12, 2005, Lillie was evaluated by Dr. Mack-Lockett, where Lillie reported developing a rash "after using a new deodorant," and complained that the rash seemed to be spreading. Dr. Mack-Lockett prescribed a topical cream (Triamcinolone) for the affected area for ten days as well as oral doses of Prednisone and Zyrtec.

Lillie's symptoms did not immediately clear up. Four days later, on May 16, 2006, Lillie was examined by a different physician, Dr. Guice, who examined Lillie and diagnosed "possible scabies." He did not diagnose a staphylococcus infection as Lillie claims. Dr. Guice advised Lillie to discontinue using the topical cream prescribed by Dr. Mack-Lockett. Instead, Dr. Guice prescribed Cephalexin and Indomethacin as well as special linens. At a follow up examination on May 27, 2005, Lillie's lesions were reportedly "almost gone."

Lillie again complained of a "boil" on his right lower leg on July 29, 2005. He refused any medication, however, stating that he did not wish to make the requisite co-payment. On August 5, 2005, Lillie was seen by a nurse practitioner and by Dr. Mack-Lockett, who prescribed medication (Rifampin and Bactrim) for fourteen days. On August 6, a nursing note reports that the wound complained of by Lillie appeared healed without any signs or symptoms of infection.

On August 24, 2005, Lillie complained that he had a "boil" on his buttocks. He was scheduled to see a physician on August 31, 2005. On that date, Lillie was examined by Dr. Syed Zaidi, who observed no "visible active boils" on Lillie's body, but saw only a "[f]ew

scattered areas of small papules and furunculosis." Dr. Zaidi prescribed Bactrim for fourteen days, a multivitamin, and lotion to treat Lillie's "dry skin."

Lillie was next seen at the clinic on December 2, 2005, where he refused dental treatment. On January 11, 2006, Lillie submitted a sick call request complaining of "staph infection" on his lip. Lillie was examined by a nurse, who noted no signs of a staph infection. There is nothing else in the record showing that Lillie continued to complain to Jail personnel or seek medical treatment by submitting sick call requests regarding his skin condition.

To the extent that Lillie disagrees with the level of care that he has received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Likewise, although Lillie faults Dr. Mack-Lockett for "incompetence," allegations of "mere negligence" will not suffice to make a claim under 42 U.S.C. § 1983. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris*, 198 F.3d at 159 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

It is well established that only "deliberate indifference" implicates a constitutional violation in this context. *See Wilson*, 501 U.S. at 297; *see also Farmer*, 511 U.S. at 835. Thus, allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind. *See Wilson*, 501 U.S. at 297; *Stewart*, 174 F.3d at 534; *see also Domino*, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference").

In conclusion, Lillie's allegation that Dr. Mack-Lockett provided inadequate care because of a mistaken diagnosis constitutes, at most, negligence, and not deliberate indifference under the governing standard. Moreover, although Lillie complains that the other defendants did nothing to help him, the pleadings and the record establish that he has received care for his condition throughout his incarceration and that he has not been denied adequate treatment at the Jail. Under these circumstances, Lillie has fails to demonstrate a valid claim under 42 U.S.C. § 1983 in connection with his medical care. The defendants are entitled to summary judgment on this issue.

### C.     Retaliation

Lillie complains that, as a result of sending grievances about the inadequate care that he received from Dr. Mack-Lockett, he was transferred to an overcrowded cell in retaliation for his complaints. The defendants deny that Lillie has been confined to an overcrowded cell or that he was subjected to retaliation for his use of the grievance process.

Claims of retaliation generally flow from protections provided by the First Amendment. A prison official may not retaliate against or harass an inmate for exercising

the right of access to the courts, or for complaining through proper channels about a guard's misconduct. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Prison officials have wide latitude in the control and discipline of inmates, but that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). Nevertheless, the Fifth Circuit has emphasized that claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *See id*. An inmate must demonstrate more than his personal belief that he is the victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id*.; *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

The defendants contend that Lillie has failed to allege facts sufficient to satisfy the requisite elements of a retaliation claim. Lillie was transferred to a different cell on August 9, 2005. The record reflects that, prior to the transfer, Lillie submitted a total of ten grievances on the following dates: May 2, 2005, May 9, 2005, May 16, 2005, June 2, 2005, June 30, 2005, July 18, 2005, and August 1, 2005. (Defendants' Motion at ¶ 4.10, Exhibit C, *Affidavit of James C. Faulkner*). Responses to these grievances show that several were "resolved" to Lillie's satisfaction; others were denied as "unfounded." (Defendants' Motion at ¶ 4.10).

15

The defendants argue that the vague allegations in Lillie's pleadings do not establish the element of retaliatory intent. In this instance, Lillie simply states that he believes the transfer must have been done in retaliation for his use of the grievance process, because there could be "no other reason" for transferring him to a different cell. To demonstrate retaliatory intent, a prisoner "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted). Lillie does not point to any direct evidence of retaliation. Likewise, Lillie's grievance record does not demonstrate that he was a persistent complainer because the number of grievances filed prior to the transfer was relatively small and sporadic. Based on this record, Lillie's conclusory allegations do not present a chronology from which retaliation could plausibly be inferred.

At best, Lillie's allegations amount to no more than his own personal belief that retaliation was the reason for his change in cell assignment. A valid retaliation claim requires more than an inmate's personal belief that he is the victim of retaliation. *See Jones*, 188 F.3d at 324-25. Because Lillie fails to provide more than his own personal belief, he has failed to state a valid claim for retaliation. The defendants' motion for summary judgment on this issue is granted.

### D.     Supervisory Liability

In addition, Sheriff Thomas moves for summary judgment on the grounds that the pleadings are not sufficient to demonstrate liability on his part as a supervisory county

official. To the extent that Lillie sues Sheriff Thomas, he plainly names him as a defendant in his supervisory capacity only as the official in charge of the Harris County Jail.

Under 42 U.S.C. § 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Adames v. Perez*, 331 F3d 508, 513 n.3 (noting that it is "clear that vicarious liability is an untenable theory of recovery in a § 1983 action"). Supervisory liability exists without overt personal participation in an offensive act only if supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted). In that regard, a supervisory law enforcement official not personally involved in the acts that allegedly deprived the plaintiff of his constitutional rights is liable under § 1983 *only* if the following three criteria are met: (1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citing *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Lillie does not allege or show that Sheriff Thomas had any personal involvement with his claims or that Sheriff Thomas otherwise had any actual knowledge of his grievances. Likewise, Lillie does not allege facts showing that there was any causal connection between a particular policy and the alleged wrongful conduct. Accordingly, Lillie does not

demonstrate that Sheriff Thomas failed to supervise or train individuals at the Jail in a manner that was deliberately indifferent to his constitutional rights. Under these circumstances, Lillie cannot maintain a civil rights suit based on a theory of supervisory liability. Accordingly, Sheriff Thomas is entitled to summary judgment on this issue.

### E.    Remaining Defendants

Other than Dr. Mack-Lockett, who has answered but has not filed a separate dispositive motion, the other defendants named in the complaint have not been served and have not appeared in this case. The Fifth Circuit has recognized, however, that when one defending party establishes that the plaintiff has no cause of action, as Sheriff Thomas has in this case, this defense generally inures also to the benefit of other similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citations omitted)). The motion filed by Sheriff Thomas disposes of all of the claims raised in the complaint. Therefore, the Court dismisses Lillie's claims against the other defendants under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

### IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The defendants' motion for summary judgment (Doc. #15) is **GRANTED**.

2.    The claims against the remaining defendants are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

3.    The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide copies of this order to the parties.

SIGNED at Houston, Texas, on **July 28, 2006.**

_____
Nancy F. Atlas
United States District Judge